UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WADE DREW BRAYMAN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   1:20-cv-00169-JAW |
| | ) |
| MAJOR RAYMOND PORTER, et al., | ) |
| | ) |
| Defendants | ) |

## RECOMMENDED DECISION
## ON DEFENDANT ELLIS' MOTION TO DISMISS

Plaintiff, an inmate at the Knox County Jail, alleges that Defendant Ellis provided inadequate medical care to him while he was incarcerated at the Somerset County Jail. (Complaint, ECF No. 1; Memorandum, ECF No. 1-1.) Plaintiff asserts his claim pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment violation.

Defendant Ellis has moved to dismiss the complaint against him. (Motion, ECF No. 19.) Plaintiff did not file an opposition to the motion.[1]

Following a review of the record and after consideration of the issues generated by Defendant's motion, I recommend the Court grant Defendant's motion to dismiss.

---

[1] District of Maine Local Rule 7(b) provides: "Unless within 21 days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." D. Me. Loc. R. 7(b). Under Local Rule 7, therefore, Plaintiff has waived objection to Defendant's motion. I nevertheless will assess the merits of Defendant's motion.

**BACKGROUND**

**A.     Procedural Record**

Plaintiff filed a complaint alleging he received inadequate medical care at the Somerset County Jail ("the jail").  Plaintiff initially named as defendants three employees of the Waldo and Somerset County Sheriffs' offices—Raymond Porter, Sean Maguire, and Gary Crafts—and a medical provider at the jail, Defendant Ellis.  (Complaint at 2-3.)  After a preliminary review of Plaintiff's complaint in accordance with 28 U.S.C. §§ 1915(e)(2) and § 1915A(b), the Court dismissed Defendants Porter and Crafts, but permitted Plaintiff to proceed against Defendants Maguire and Ellis. (Recommended Decision, ECF No. 9; Order Affirming, ECF No. 10.)

Defendant Ellis filed a motion to dismiss in which he argues that Plaintiff "has neither sufficiently served Defendant Ellis with a copy of his Complaint nor set forth a plausible claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(5), (6).

**B.     Factual Record**

    **1.     Scope of the Factual Record**

In support of his motion to dismiss, Defendant Ellis filed various documents, which consist of Plaintiff's requests for medical care and records of his treatment by the jail's medical staff.  (Exhibits, ECF Nos. 20-1 through 20-23.)[2]   Defendant contends that the documents are either "specifically referenced by Plaintiff in his Complaint" or are "central,

---

[2] Defendant also filed a motion to seal the exhibits, which the Court granted.  (Motion, ECF No. 20; Order, ECF No. 21.)  If the Court adopts the recommendation, I recommend that the records cited in this Recommended Decision as related to the assertions in Plaintiff's complaint (Exhibits, ECF Nos. 20-7, 20-8, 20-11, 20-12, 20-13, 20-16) be unsealed.

2

critical, and integral to his constitutional claim grounded upon deliberate indifference." Defendant requests that the Court consider the documents in conjunction with the motion to dismiss. (Motion at 5.)

In reviewing a motion to dismiss, a court "take[s] as true all well-pleaded facts set forth in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) (quotation marks omitted). A motion to dismiss "generally provides no occasion upon which to consider documents other than the complaint." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020). "Reliance on facts beyond the complaint's allegations might require converting the motion to dismiss into a motion for summary judgment." *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

"However, there are some 'narrow exceptions' in which a court may, if it chooses, consider extrinsic documents, such as 'documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to the plaintiff's claim; [and] . . . documents sufficiently referred to in the complaint' without turning the 12(b)(6) motion into a motion for summary judgment." *Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 25 (1st Cir. 2018) (alterations in original) (quoting *Freeman*, 714 F.3d at 36); *accord Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). "This is true even when the documents are incorporated into the movant's pleadings." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (citing *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly

3

consider it under a Rule 12(b)(6) motion to dismiss." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Beddall*, 137 F.3d at 17). As the First Circuit has reasoned, a "court's inquiry into the viability of [a plaintiff's] allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which by [the plaintiff's] own admission the allegations rest." *Beddall*, 137 F.3d at 17; *see Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (recognizing that a plaintiff is not permitted to "maintain a claim . . . by excising an isolated statement from a document and importing it into the complaint . . . ." (quotation marks omitted)).

On the other hand, "not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988); *see Freeman*, 714 F.3d at 36 ("The mere mention of [a document] in the complaint does not amount to sufficient reference." (citing *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)). Rather, "for a document to be incorporated into the pleadings, the Court must find that the document is 'referred to in the plaintiff's complaint and . . . central to [a] claim.'" *Goodman v. President & Trs. of Bowdoin College*, 135 F. Supp. 2d 40, 47 (D. Me. 2001) (quoting *Beddall*, 137 F.3d at 17); *see Fudge*, 840 F.2d at 1015 (permitting consideration of an extrinsic exhibit that was "absolutely central" to a plaintiff's complaint). This requires that "a complaint's factual allegations [be] expressly linked to" and "dependent upon" any such extrinsic document. *Beddall*, 137 F.3d at 17; *see Clorox Co.*, 228 F.3d at 32 (permitting consideration of "the relevant entirety of a

4

document integral to or explicitly relied upon in the complaint" (quotation marks omitted)). "Mere relevance to the factual allegations in the complaint is not enough." *Beaney v. Univ. of Me. Sys.*, No 2:16-cv-00544-JDL, 2017 U.S. Dist. LEXIS 27532, *8 (D. Me. Feb. 28, 2017) (citing *Piampiano v. Cent. Me. Power Co.*, 221 F. Supp. 2d 6, 10 (D. Me. 2002))

Here, in his complaint, Plaintiff references various extrinsic documents related to his claim, including inmate medical request and grievance forms. (Memorandum ¶¶ 14, 18-22, 24, 26-28.) The documents referenced by Plaintiff are "integral," *Clorox Co.*, 228 F.3d at 32, or "central," *Beddall*, 137 F.3d at 17, to the factual allegations in the complaint—namely, Defendant's response to his requests and the adequacy of medical care he received. In assessing the sufficiency of Plaintiff's claim, therefore, the Court may consider the documents submitted by Defendant that are referenced by Plaintiff in his complaint and central to his claim. (*See* Exhibits, ECF Nos. 20-7, 20-8, 20-11, 20-12, 20-13, 20-16.) Consideration of documents submitted by Defendant, although perhaps relevant, but not referenced by Plaintiff or "explicitly relied upon," *Clorox Co.*, 228 F.3d at 32, in the complaint would not be appropriate. *See Beaney*, 2017 U.S. Dist. LEXIS 27532, *8 (declining to review extrinsic document that was "neither referenced in [the] Complaint nor central to [plaintiff's] claims"); *see also Hanner v. Westchester Cty.*, 16 CV 7610 (VB), 2019 U.S. Dist. LEXIS 47061, **8-9 (S.D.N.Y. Mar. 20, 2019) (concluding that medical records submitted with defendants' motion to dismiss could not be reviewed because, in part, "plaintiff did not rely on the medical records" in the complaint); *Gay v. Esquetini*, No. CV 15-06627-BRO, 2016 U.S. Dist. LEXIS 197889, **10-11 (C.D. Ca. Aug. 22, 2016) (concluding that extrinsic medical records attached to motion to dismiss

5

would not be considered when the complaint "[did] not mention or include references to" the medical records).

### 2. Factual Background[3]

In October 2019, Plaintiff was assaulted at the jail by another inmate. (*Id.* ¶ 14.) According to Plaintiff, he suffered cuts on his body, bruising and swelling on his face, and two broken teeth. (*Id.*) Following the assault, medical staff examined Plaintiff and ordered x-rays be performed on his head and jaw. (*Id.*)

On January 8, 2020, Plaintiff filed a grievance regarding the medical staff's "refus[al] to reply" to Plaintiff's prior "Inmate Medical Request Forms." (*Id.* ¶ 18; *see* Exhibit, ECF No. 20-16.) Plaintiff claims he suffered from hearing loss and "severe ear pain." Plaintiff alleges that medical staff believed the hearing loss was caused by "wax build-up" and had used ear drops to treat the condition. (Memorandum ¶ 18.) Plaintiff claims a nurse "flushed" his ears after using the ear drops. (*Id.*; Exhibit, ECF No. 20-16.) In his grievance, Plaintiff asserted that the flushing tool "hit [his] right ear drum and since that time . . . [he had] lost at least half of [the] volume in [his] right ear." (Exhibit, ECF No. 20-16.) According to Plaintiff, Defendant Ellis confirmed that the "flushing tool hit[] [Plaintiff's] eardrum." (Memorandum ¶ 18.) The grievance form, which was reviewed by a member of the medical staff on January 9, 2020, reflects that Plaintiff had a "normal ear

---

[3] The facts are derived from Plaintiff's complaint and are accepted as true for purposes of evaluating the pending motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

6

drum." [4] (Exhibit, ECF No. 20-16.) Plaintiff filed a subsequent grievance related to his hearing issues on January 24, 2020. (Memorandum ¶ 19.)

On February 1, 2020, Plaintiff filed an Inmate Medical Request form regarding tooth pain. (*Id.* ¶ 20; Exhibit ECF No. 20-7.) In the request form, Plaintiff asserted that he had previously spoken with "the provider" about a dental referral and asked to "start . . . again" a treatment of "Tylenol and [a] salt water wash for [his] teeth." (Exhibit ECF No. 20-7.) Plaintiff also requested that medical staff provide this treatment "until extraction." The form reflects that medical staff was notified of the issue on February 2 and that on the following day, a nurse wrote that Plaintiff's requested treatment would be "put on [a] sick call to provider." (*Id.*) On February 4, Plaintiff asked medical staff and prison staff for topical pain medication for his teeth, but he did not obtain the medication. (Memorandum ¶ 21; Exhibit, ECF No. 20-8.) On February 15, Plaintiff filed an additional Inmate Medical Request form, in which he stated that the antibiotic order for his ear and tooth pain "ha[d] run out" and that he continued to experience pain. (Memorandum ¶ 22; Exhibit, ECF No. 20-11.) A nurse noted that there were "new orders for antibiotic [and] pain" and that an "appointment has been made." (Exhibit, ECF No. 20-11.)

On March 1, 2020, Plaintiff filed an Inmate Medical Request form regarding his "ear pain," "hearing loss," and "broken teeth." (Memorandum ¶ 24; Exhibit, ECF No. 20-12.) Plaintiff alleges that the medication he had been receiving was no longer effective. (Memorandum ¶ 24; Exhibit, ECF No. 20-12.) The form reveals that a member of the

---

[4] In his complaint, Plaintiff references not only his assertions in the inmate medical request and grievance forms, but the responses included on the forms. (*See e.g.*, Memorandum ¶¶ 18, 19, 23, 24.)

medical staff responded to Plaintiff's request and represented that "the provider . . . addressed [Plaintiff's] issue with [his] ears" and that Plaintiff "has been on treatment for that." (Exhibit, ECF No. 20-12.) The form also states that "[a] dental referral is in the makings" and that Plaintiff should "complete his antibiotics ordered [on] 2/14/20." (Memorandum ¶ 24; Exhibit, ECF No. 20-12.) Plaintiff filed another Inmate Medical Request Form on April 6, 2020, in which he alleged that "all pain treatment has been terminated, the antibiotics have stopped, and the nurse said today all follow-up care with dental professionals has been stopped."[5] (Memorandum ¶ 26; Exhibit, ECF No. 20-13.) According to Plaintiff, medical staff did not respond to his form.[6] (Memorandum ¶ 26.) The following day, Plaintiff filed a grievance with the jail, stating that his ear and tooth pain had been uncorrected for over six months. (Memorandum ¶ 27, p. 11.)

## DISCUSSION

**A.    Motion to Dismiss Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In doing so, a court "assume[s] the truth of all well-pleaded facts and

---

[5] Defendant contends that the dental referral scheduled for April was postponed due to the Covid-19 pandemic. (Motion at 9.)

[6] Plaintiff alleges that he filed a subsequent Inmate Medical Request form on April 13, 2020, because he had not received a response to his April 6 request. (Memorandum ¶ 28.)

give[s] the plaintiff the benefit of all reasonable inferences therefrom." *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)). The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young*, 717 F.3d at 231. Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

"A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist. LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

**B.     Plaintiff's Deliberate Indifference Claim**

Defendant contends that the allegations in Plaintiff's complaint fail to "demonstrate a constitutional claim based on deliberate indifference." (Motion at 17.) Defendant argues that he is mentioned by name only twice in the complaint, and that the allegations are insufficient to support a claim under § 1983. (Motion at 15.)

9

"Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016); *see* 42 U.S.C. §1983.  To prevail on such a claim, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman*, 714 F.3d at 37  (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  From this prohibition, "courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "The Eighth Amendment, applied to the states through the Fourteenth Amendment, protects incarcerated people from state corrections officials' 'deliberate indifference to serious medical needs.'"  *Zingg v. Groblewski*, 907 F.3d 630, 634-35 (1st Cir. 2018) (quoting *Feeney v. Corr. Med. Servs.*, Inc., 464 F.3d 158, 161-62 (1st Cir. 2006)).  To allege "a claim of deliberate indifference based on inadequate or delayed medical care, 'a plaintiff must satisfy both a subjective and objective inquiry.'"  *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015) (quoting *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011)).

First, to demonstrate a claim under the objective prong, a plaintiff "must show that []he has a serious medical need for which []he has received inadequate treatment." *Kosilek*, 774 F.3d at 85.  For a medical condition to be objectively "serious," there must be "a

sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). This "requires that the need be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Kosilek*, 774 F.3d at 82 (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). "The seriousness of an inmate's needs may also be determined by reference to the effect of the delay of treatment." *Leavitt*, 645 F.3d at 497-98 (quotation marks omitted). However, this "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Kosilek*, 774 F.3d at 82 (citations omitted). "Rather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'" *Id.* at 83 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)).

Second, under the subjective prong, "a plaintiff must show 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt*, 645 F.3d at 497). Thus, "even if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek*, 774 F.3d at 83. "For purposes of this subjective prong, deliberate indifference 'defines a narrow band of conduct,' and requires evidence that the failure in treatment was purposeful." *Id.* (citation omitted) (quoting *Feeney*, 464 F.3d at 162); *see Perry*, 782 F.3d at 79 (stating that deliberate indifference "requires evidence that the absence or inadequacy of treatment is intentional"). A constitutional claim may arise

11

when "the treatment provided [was] so inadequate as 'to constitute an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Leavitt*, 645 F.3d at 497 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  However, "when a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation." *Feeney*, 464 F.3d at 162 (alterations and quotation marks omitted).  Moreover, "[p]rison officials 'who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Giroux v. Somerset County*, 178 F.3d 28, 33 (1st Cir. 1999) (quoting *Farmer*, 511 U.S. 825 at 844); *see Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002) (recognizing that the focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response").

Here, Plaintiff alleges Defendant Ellis provided "sub-standard medical care" regarding an ear and his teeth.  (Complaint at 3.)

### 1.   Treatment of Plaintiff's Ear

The factual allegations in the complaint and the related documents demonstrate that Plaintiff was treated with ear drops for "wax build-up" in January 2020.  (Memorandum ¶ 18.)  Plaintiff alleges that the nurse who "flushed" his ears after using the ear drops had "hit [his] right ear drum" while doing so.  (*Id*.; Exhibit, ECF No. 20-16.)  Plaintiff also alleges that Defendant Ellis confirmed that the "flushing tool hit[] [Plaintiff's] eardrum."  (Memorandum ¶ 18.)  According to the finding on the relevant grievance form, as of

January 9, 2020, Plaintiff had a "normal ear drum." (Exhibit, ECF No. 20-16.) Additionally, throughout February and early March, Plaintiff was provided antibiotics by medical staff. (Memorandum ¶¶ 22, 24; Exhibit, ECF Nos. 20-11, 20-12.)

Given the treatment provided to Plaintiff through ear drops and antibiotics, the pain in Plaintiff's ear could be considered objectively serious. *See Kosilek*, 774 F.3d at 82. To satisfy the subjective prong of the deliberate indifference standard, Plaintiff's allegations must also support a finding that the alleged inadequate medical care was "purposeful." *Kosilek*, 774 F.3d at 83. Although Plaintiff alleges that Defendant Ellis confirmed that the flushing tool hit Plaintiff's eardrum, neither the factual allegations nor the related documents include facts that would support a finding that Defendant Ellis purposefully disregarded Plaintiff's medical condition or provided substandard care. Accordingly, Plaintiff has not asserted a claim of deliberate indifference against Defendant Ellis regarding the treatment of Plaintiff's ear condition.

### 2. Treatment of Plaintiff's Teeth

Plaintiff alleges that at some point prior to February 1, 2020, he spoke with medical staff about tooth pain and the possibility of a dental referral to extract his damaged teeth. (Memorandum ¶ 20; Exhibit ECF No. 20-7.) In early February, medical staff at the jail provided Plaintiff pain medication and a saltwater rinse to ease the pain in his teeth. (Memorandum ¶ 20; Exhibit ECF No. 20-7.) After Plaintiff's pain persisted, medical staff provided Plaintiff with prescriptions for antibiotics. (Memorandum ¶¶ 22, 24; Exhibit, ECF Nos. 20-11, 20-12.)

Plaintiff alleges that a dental referral was discussed in February 2020 and that the referral had not occurred by the time he filed his complaint in May 2020.  (Memorandum ¶¶ 20, 26; Exhibits, ECF Nos. 20-7, 20-13.)  Plaintiff was treated by medical staff with pain medication and was prescribed antibiotics for his teeth throughout February and March.  (Memorandum ¶¶ 20, 22, 24; Exhibit, ECF Nos. 20-7, 20-11, 20-12.)  Although "'[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain,'" *Murphy v. Corizon*, No. 1:12-CV-00101-JAW, 2012 U.S. Dist. LEXIS 181538, *24 (D. Me. Oct. 24, 2012) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)), in instances where a "plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment . . . falls short of alleging a constitutional violation," *Feeney*, 464 F.3d at 162 (alterations and quotation marks omitted).

Plaintiff's sole reference to Defendant Ellis regarding the treatment of Plaintiff's teeth is Plaintiff's assertion that he was informed that a dental referral was made after seeing "R. Ellis, PAC." (Memorandum ¶ 23.)  Plaintiff's allegations lack any facts to suggest that Defendant Ellis was responsible for a delay in a dental consult or that Defendant Ellis purposefully or intentionally provided substandard care in the treatment of Plaintiff's teeth. In other words, Plaintiff has failed to allege that Defendant Ellis possessed a "sufficiently culpable state of mind," to support a deliberate indifference claim regarding the treatment of Plaintiff's teeth. *Perry*, 782 F.3d at 78 (quoting *Leavitt*, 645 F.3d at 497).

## C.  Plaintiff's Supervisor Liability Claim

In construing Plaintiff's complaint liberally, the complaint conceivably could be read to assert a claim pursuant to § 1983 alleging supervisor liability.  Defendant contends that Plaintiff has failed to sufficiently plead facts supporting such a claim.  (Motion at 15-16.)

"A supervisory liability claim under section 1983 has two elements: the plaintiff must plausibly allege that 'one of the supervisor's subordinates abridged the plaintiff's constitutional rights' and then forge an affirmative link between the abridgement and some action or inaction on the supervisor's part." *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (quoting *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016).  "[A] supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority." *Guadalupe-Báez*, 819 F.3d at 515 (citation omitted).  "This does not mean, however, that for section 1983 liability to attach, a supervisor must directly engage in a subordinate's unconstitutional behavior."  *Id.*   Rather, a supervisor's "own acts or omissions must work a constitutional violation." *Parker*, 935 F.3d at 15.  Thus, liability for a supervisor "may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir.1999)); *see also Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (liability for "supervisory encouragement, condonation or acquiescence or gross negligence amounting

to deliberate indifference" toward unconstitutional conduct of others (quotation marks omitted)).

"A showing of deliberate indifference has three components: 'the plaintiff must show (1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists.'" *Parker*, 935 F.3d at 15 (quoting *Guadalupe-Báez*, 819 F.3d at 515). Additionally, a plaintiff must "allege facts giving rise to a causal nexus between the supervisor's acts or omissions and the subordinate's misconduct." *Id.*

Plaintiff has failed to allege facts to support a finding that Defendant Ellis was the supervisor of the individuals who provided care to Plaintiff. In addition, even if Defendant Ellis was alleged to be the supervisor of one or more of the care givers and even if Plaintiff's complaint is construed to assert an actionable claim of deliberate indifference against one of the medical staff members, Plaintiff has not alleged any facts to suggest an "affirmative link" between the alleged violation of Plaintiff's rights by medical staff members and any "action or inaction" by Defendant Ellis. In other words, Plaintiff has not alleged facts showing that Defendant failed to train or supervise any of the medical staff, *Sanchez*, 590 F.3d at 49, or that he "encourage[d]" or "condon[ed]," *Pineda*, 533 F.3d at 54, any alleged unconstitutional acts of the staff. Plaintiff, therefore, has failed to assert an actionable claim of supervisory liability against Defendant Ellis.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant Ellis' motion to dismiss.[7]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 1st day of February, 2021.

---

[7] Because I have recommended dismissal of Plaintiff's claim against Defendant Ellis pursuant to Rule 12(b)(6), I have not addressed Defendant's argument regarding the sufficiency of service of process.